**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Mohamed Ouahman

        v.                              Civil No. 11-cv-075-SM

James O'Mara, Superintendent,
Hillsborough County Department
of Corrections[1]


**REPORT AND RECOMMENDATION**


Mohamed Ouahman has filed a complaint (doc. no. 1) and an addendum to the complaint (doc. no. 3),[2] pursuant to 42 U.S.C. § 1983, asserting that his federal constitutional rights have been violated during his pretrial detention at the Hillsborough County House of Corrections ("HCHC").  The matter comes before the court for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted.  See 28 U.S.C. § 1915A(a); Rule 4.3(d)(2) of

---

[1]Aside from James O'Mara, no defendants are listed in the caption of plaintiff's complaint.  The narrative of the complaint, however, identifies Sgt. Barnes as an intended defendant to this action.  Accordingly, the court construes the complaint as having named Barnes as a defendant.

[2]The addendum (doc. no. 3) arrived at the court as a letter. As the letter sought to supplement the factual allegations in the complaint, the court has construed the document as an addendum to the complaint.  The complaint (doc. no. 1) and the addendum (doc. no. 3) will be considered, in the aggregate, to comprise the complaint in this matter for all purposes.

the Local Rules of the United States District Court for the
District of New Hampshire ("LR").

## Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff or
petitioner commences an action pro se, the magistrate judge
conducts a preliminary review.  The magistrate judge may issue a
report and recommendation after the initial review, recommending
that claims be dismissed if the court lacks subject matter
jurisdiction, the defendant is immune from the relief sought,
the complaint fails to state a claim upon which relief may be
granted, the allegation of poverty is untrue, or the action is
frivolous or malicious.  See id. (citing 28 U.S.C. § 1915A &
Fed. R. Civ. P. 12(b)(1)).  In conducting a preliminary review,
the magistrate judge construes pro se pleadings liberally, to
avoid inappropriately stringent rules and unnecessary
dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per
curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976),
to construe pleadings liberally in favor of pro se party);
Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if the complaint states any claim upon which
relief could be granted, the court applies a standard analogous
to that used in reviewing a motion to dismiss filed under Fed.
R. Civ. P. 12(b)(6).  The court decides whether the complaint

2

contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950 (citation omitted). In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

## Background

Mohamed Ouahman is a pretrial detainee at the HCHC, where he has been held since January 5, 2011, unable to post bail. Ouahman states that his bail is higher than his codefendant, even though his codefendant has more charges than he does. Ouahman also alleges that his codefendant is held in general population, while he has been held in a maximum security unit for much of his pretrial incarceration, although, he claims, there is no security-based reason to so house him, and that the HCHC officers have written false reports to justify his placement in that unit. Ouahman claims that this housing

disparity results from the classification officers discriminating against Ouahman for his race, ethnicity, and religion.

Ouahman states that HCHC officers, pursuant to the same discriminatory animus, call him names and sometimes deny him food. Ouahman states that there are four to six officers at the HCHC who have spat in his food. Ouahman reported to an HCHC sergeant that officers had spat in his food; the sergeant accused Ouahman of lying. Ouahman states that HCHC officers sometimes beat him up during cell searches.

On one occasion, Ouahman states that his finger was broken during a beating he received from officers. The HCHC medical department did nothing to treat his broken finger or help to alleviate the pain resulting therefrom.

Ouahman practices the Muslim faith, and states that he has been denied the ability to practice his religion for at least four months. Ouahman has been denied access to his religious text (the Qur'an), and a prayer rug.

Ouahman states that on April 15, 2011, his hygiene items were all taken from him when he was returned to maximum security after having been released from that unit for one day. When Ouahman inquired of HCHC Sgt. Barnes why he was being returned to maximum security, Barnes responded that it was because Barnes could do what he wanted and that he was going to "fuck with"

Ouahman until Ouahman left the HCHC.  Ouahman further claims that his treatment at the hands of HCHC officials has worsened since they discovered that Ouahman had filed this lawsuit.

### The Claims

Liberally construed, the complaint in this matter sets forth the following claims for relief[3]:

1.    Ouahman was denied his Fourteenth Amendment right to equal protection of the laws when his bail was set higher than his codefendant's even though his codefendant was facing more charges than Ouahman.

2.    Ouahman was housed in maximum security during most of his pretrial detention, while his codefendant was housed in general population, in violation of Ouahman's Fourteenth Amendment equal protection rights, due to discriminatory animus of HCHC officers based on Ouahman's race, religion, and ethnicity.

3.    Ouahman was subjected to verbal harassment by HCHC officers, in violation of his Fourteenth Amendment due process rights.

---

[3]The claims, as identified herein, will be considered to be the claims raised in the complaint for all purposes.  If Ouahman disagrees with this identification of the claims, he must move to amend his complaint or properly object to this report and recommendation.

4.   Ouahman was denied hygienic conditions of confinement, in violation of his Fourteenth Amendment right not to be subjected to punitive conditions of confinement during his pretrial detention when HCHC officers: (a) spat in his food on several occasions; (b) denied him food altogether at times; and (c) took his hygiene items.

5.   Ouahman was subjected to excessive force, in violation of his Fourteenth Amendment right not to be subjected to punishment as a pretrial detainee, when he was beaten a number of times during cell searches, and had his finger broken during a beating on one occasion.

6.   Ouahman was denied adequate medical care for a serious medical need when the HCHC medical department "did nothing" to treat either his injury or his pain when HCHC officers broke his finger during a beating.

7.   Ouahman's rights under the Religious Land Use and Institutionalized Person's Act, 42 U.S.C. § 2000cc-1 et seq. ("RLUIPA") were violated when he was denied access to a Qur'an and a prayer rug.

8.   Ouahman's First Amendment right to practice his religion was violated when he was denied access to a Qur'an and a prayer rug.

9.   Ouahman was subjected to retaliation, in violation of his First Amendment right to petition the government for a

redress of grievances, when HCHC officers heightened their
mistreatment of him after learning that he had filed this
lawsuit.

## Discussion

I.   <u>Section 1983</u>

Section 1983 creates a cause of action against those who,
acting under color of state law, violate federal constitutional
or statutory law.  <u>See</u> 42 U.S.C. § 1983; <u>City of Okla. City v.
Tuttle</u>, 471 U.S. 808, 829 (1985); <u>Wilson v. Town of Mendon</u>, 294
F.3d 1, 6 (1st Cir. 2002).  42 U.S.C. § 1983 provides that:

> Every person who under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law . . ..

In order for a defendant to be held liable under § 1983, his or
her conduct must have caused the alleged constitutional or
statutory deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436
U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061-62
(1st Cir. 1997).  Here, Ouahman claims that the defendants, who
are state actors, violated his federal constitutional rights.
As such, his claims arise under § 1983.

II.  <u>Equal Protection - Bail</u>

The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny any person within its jurisdiction equal protection of the law."  U.S. Const. Amend. XIV.  This provision requires States to treat similarly situated people in a similar manner.  <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985).

Generally, to establish an equal protection claim, a plaintiff must demonstrate that, (1) compared with others similarly situated, he was selectively treated, and (2) that the selective treatment was motivated by purposeful discrimination on some improper basis, such as plaintiff's membership in a particular race or religion.  <u>See</u> <u>Hernandez v. New York</u>, 500 U.S. 352, 360 (1991).  A plaintiff may also state a claim alleging a violation of the Equal Protection Clause as a "class of one," rather than as a member of an identifiable group, where plaintiff alleges "[]he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

Petitioner here states that his bail was set higher than that of his codefendant, who had more charges than he did. Petitioner does not assert any improper basis, such as discrimination on the part of the arraigning court, for the

discrepancy in bail. Further, to the extent that plaintiff seeks to bring this claim as a "class of one," he has failed to allege that he was treated differently than others "similarly situated" to him in the bail context, without a rational basis therefor. "[I]n the context of individualized assessments necessarily performed by state courts in the bail context, it is difficult to establish that anyone is similarly situated to another vis a vis bail bond so as to succeed on an equal protection theory." Martin v. Diguglielmo, 644 F. Supp. 2d 612, 622 (W.D. Pa. 2008). The fact that a codefendant was granted a different bail amount, without more, is therefore insufficient to sustain an equal protection claim. Ouahman's claim relating to his bail should be dismissed.

II. Discrimination – HCHC Officials

Ouahman alleges that he has been discriminated against on the basis of his race, religion, and ethnicity by a number of HCHC officers. To assert his equal protection claim for discrimination, Ouahman must allege facts to demonstrate that the defendant officers would have treated someone who is not of Ouahman's race, ethnicity, or religion differently than he was treated, as well as facts to allow the court to conclude that it was plausible that there was no compelling governmental interest in that differential treatment. See Grutter v. Bollinger, 539

U.S. 306, 326 (2003) (citing <u>Loving v. Virginia</u>, 388 U.S. 1, 11 (1967)).

Here, Ouahman states broadly that he was subjected to name-calling, restrictive housing, a deprivation of hygiene products, expectoration in his food, being denied food at times, beatings, the denial of medical care, and a denial of the ability to practice his religion.  Ouahman alleges no facts, however, which point to discriminatory animus on the part of any HCHC officer who mistreated him.  Ouahman baldly asserts that his mistreatment was due to discrimination.  Such an assertion is insufficient to state an equal protection claim.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949 (requiring more than naked assertions).  Ouahman's equal protection claims should therefore be dismissed.

III. <u>Maximum Security Housing</u>

Ouahman states that during most of his stay at the HCHC, he has been housed in maximum security without good cause based on false reports made by HCHC officers.  In general, an inmate has no constitutionally protected liberty interest in being housed in a particular facility or classified in a particular security status.  <u>See</u> <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221-22 (2005) (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976) (prison officials have discretion to transfer inmate "for whatever reason or for no reason at all")); <u>Meachum</u>, 427 U.S. at 228

11

(expectation that a certain housing status will continue is too ephemeral to trigger procedural due process protections).

Pretrial detainees, such as Ouahman, however, do have the right, under the Due Process Clause of the Fourteenth Amendment, not to be punished prior to conviction.  See Surprenant v. Rivas, 424 F.3d 5, 14 (1st Cir. 2005).  However, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense . . . Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention."  Bell v. Wolfish, 441 U.S. 520, 537 (1979).

Where, as here, plaintiff is a pretrial detainee, the court must determine "whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of the word" and "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."  Id. at 538.  "If a restriction appears to be unrelated to a legitimate governmental objective, and is, for example, arbitrary or purposeless, then a court may infer that it is intended to be punishment."  Lyons v. Powell, 838 F.2d 28, 29 (1st Cir. 1988).

Placement in a high security status, without more, is insufficient to allege an intent to punish.  Here, however,

12

Ouahman states that, because he had done nothing to merit a transfer from general population to maximum security housing, Ouahman asked Sgt. Barnes why he was being moved.  Barnes, according to the complaint, which the court must accept as true at this stage of the proceedings, told Ouahman that he moved him in order to "fuck with" him, and that he intended to continue to do so while Ouahman was at the HCHC.  Ouahman has therefore alleged that Barnes acted with the intent to punish him by subjecting him to unnecessarily restrictive housing conditions while Ouahman was detained pretrial.  Accordingly, Ouahman has stated a claim against Barnes alleging that his undeserved placement in maximum security housing violated his Fourteenth Amendment right to due process.  See Ford v. Clarke, 746 F. Supp. 2d 273, 289-90 (D. Mass. 2010) (detention of pretrial detainee in a disciplinary housing unit for purpose of punishment, rather than for legitimate governmental purpose, violated detainee's Fourteenth Amendment right).

IV.  Food and Hygiene Issues

Ouahman alleges that HCHC officers spat in his food on four to six occasions, depriving him of hygienic food on those occasions, and on other occasions, deprived him of food altogether.  Ouahman also alleges that on one occasion, all of his hygiene items were taken from him when he was placed in

maximum security.  Ouahman alleges that these actions violated the Fourteenth Amendment where the actions were taken against him simply for the purpose of harassing and punishing him, rather than for any legitimate penological purpose.  See Mosher v. Nelson, 589 F.3d 488, 493 n. 3 (1st Cir. 2009) (pretrial detainee's conditions of confinement claims must be analyzed under Fourteenth Amendment); Surprenant, 424 F.3d at 15. Accordingly, Ouahman has alleged unconstitutionally punitive conditions of confinement that violate his Fourteenth Amendment rights.  Ouahman has not, however, named the defendants who engaged in or were responsible for the commission of these acts. In order to pursue these claims, Ouahman will have to amend his complaint to name individuals defendants who committed these acts against him.[4]

---

[4]In an order issued simultaneously with this report and recommendation, the court has directed that the complaint in this matter be served on Barnes.  After the complaint has been served, Ouahman may serve interrogatories upon defendant Barnes seeking the name of the individual or individuals he believes to be liable for violating his rights.  See Fed. R. Civ. P. 33(a) (party may serve on any other party no more than 25 written interrogatories, regarding any nonprivileged matter relevant to party's claim or defense.  Ouahman may thereafter seek to amend the complaint to add such individuals as defendants.  See Fed. R. Civ. P. 15(a) (complaint may be amended once within 21 days after defendant serves answer or moves to dismiss complaint, and thereafter plaintiff may amend complaint upon parties' consent or with court's leave).

V.   Verbal Harassment

Ouahman alleges that he has been called names by HCHC officers.  Verbal harassment of inmates by corrections officers does not violate any constitutional right.  See Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991); Shabazz v. Cole, 69 F. Supp. 2d 177, 198-201 (D. Mass. 1999).  Accordingly, any name-calling or other verbal harassment to which Ouahman has been subjected is not actionable, and the claim should be dismissed.

VI. Retaliation

Ouahman states that since the filing of this action, his treatment at the HCHC has been worse than prior to his filing. It appears that Ouahman intends to assert a claim that the HCHC officers increased their mistreatment of him to retaliate against him for filing this action.

The First Amendment shields prisoners from retaliation in response to their engaging in protected speech.  Ortiz v. Jordan, ___ U.S. ___, ___, 131 S. Ct. 884, 893 (2011) (citing Crawford-El v. Britton, 523 U.S. 574, 592 (1998)). "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); see also Ferranti v.

Moran, 618 F.2d 888, 892 n. 4 (1st Cir. 1980) ("actions
otherwise supportable lose their legitimacy if designed to
punish or deter an exercise of constitutional freedoms").

In order to state a claim for retaliation for exercising
his First Amendment rights, Ouahman must allege: (1) the conduct
which led to the alleged retaliation was protected by the First
Amendment; (2) some adverse action at the hands of the prison
officials; and (3) a causal link between the exercise of his
First Amendment rights and the adverse action taken.  See Hannon
v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).

Ouahman has a First Amendment right to file a lawsuit in
this court complaining of unconstitutional conditions of
confinement.  See Lewis v. Casey, 518 U.S. 343, 405 (1996);
Rhodes v. Chapman, 452 U.S. 337, 362 n. 9 (1981).  Further, he
has alleged that he has been subjected to numerous adverse acts
at the HCHC.  The first two prongs of his retaliation claim are
therefore satisfied.  Ouahman's claim fails, however, on the
third prong.  Ouahman has failed to state any specific fact
indicating that any of the adverse acts he alleges have been
taken against him were in any way causally related to his filing
of a lawsuit.  Ouahman's general assertion that the treatment he
has received at the HCHC has worsened since this filing,
standing alone, is inadequate to allege that the two were
causally connected.  The retaliation claim should be dismissed.

16

VII. <u>Religious Practice</u>

  A. <u>RLUIPA</u>

  RLUIPA provides that:

> No government shall impose a substantial burden
> on the religious exercise of a person residing in
> or confined to an institution, as defined in [42
> U.S.C. § 1997], even if the burden results from a
> rule of general applicability, unless the
> government demonstrates that imposition of the
> burden on that person (1) is in furtherance of a
> compelling governmental interest; and (2) is the
> least restrictive means of furthering that
> compelling governmental interest.

42 U.S.C. § 2000cc-1(a).[5]  To state a claim under RLUIPA, a

plaintiff must assert that a substantial burden has been placed

on the exercise of his religion.  <u>See</u> <u>Crawford v. Clarke</u>, 578

F.3d 39, 43 (1st Cir. 2009).  The First Circuit has not defined

what constitutes a "substantial burden" on the exercise of

religion, but has assumed a prima facie showing of "substantial

burden" was made where a restriction put "substantial pressure

on an adherent to modify his behavior and to violate his

beliefs."  <u>Spratt v. R. I. Dep't of Corrs.</u>, 482 F.3d 33, 38 (1st

Cir. 2007) (citing <u>Thomas v. Review Bd. Of Ind. Emp't Sec. Div.</u>,

450 U.S. 707, 718 (1981) (discussing "substantial burden" on the

exercise of religion in the context of the First Amendment)).

---

   [5]For purposes of preliminary review, I find that Ouahman is
an institutionalized person within the meaning of RLUIPA.  <u>See</u>
42 U.S.C. § 1997(1) (including jails and prisons in the
definition of "institution").

Once a plaintiff claims a "substantial burden" on his religious practice, the burden shifts to the government to demonstrate that the restriction in question furthers a "compelling" government interest and does so by the "least restrictive means" available.  See Spratt, 482 F.3d at 38. Accordingly, to state a claim for relief, Ouahman need only allege that his religious practice was "substantially burdened" by the challenged restriction.

Ouahman states that he has been unable to practice his religion because he has been denied access to a religious text (the Qur'an), and a prayer rug.  Ouahman does not make clear whether he possessed a Qur'an and prayer rug at the HCHC which were taken from him, or whether the HCHC generally provides those items to Muslim inmates but has refused to provide them to Ouahman, on some improper basis.  Ouahman's assertions are minimally sufficient, however, to state a plausible claim that religious items have been denied to him without any sufficient or legitimate institutional interest in the deprivation. Ouahman has thus stated sufficient facts to allege that a substantial burden was placed on the exercise of his religion, and he has thus stated a claim under RLUIPA for the denial of the Qur'an and a prayer rug.  Again, however, Ouahman has failed to name any individual jail official who is directly responsible for this deprivation.  Accordingly, Ouahman will have to amend

18

his complaint to name a defendant (or defendants) to this claim. Ouahman would also be well-advised to assert, with specificity, in his amended complaint, the specific basis upon which he rests his asserted right to a Qur'an and a prayer rug during his incarceration at the HCHC.

B.   Free Exercise Clause

The First Amendment's Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).  This provision applies to the states under the Fourteenth Amendment.  See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 6 n.4 (2004).

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," including the right to the free exercise of religion. Pell v. Procunier, 417 U.S. 817, 822 (1974).  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Cruz v. Beto, 405 U.S. 319, 322 (1972)).  A prisoner's sincerely held religious beliefs must yield if they are contrary to prison regulations that are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 75, 89 (1987).  A court evaluating a claim that a prison regulation

interfered with an inmate's rights under the First Amendment's Free Exercise Clause must accord prison administrators significant deference in defining legitimate goals for the corrections system, and for determining the best means of accomplishing those goals.  See Overton v. Bazzetta, 539 U.S. 126, 132 (2003); Pell, 417 U.S. at 826-27.

Here, Ouahman alleges he was denied access to a prayer rug and a Qur'an.  The facts as alleged in the complaint allow no inference of a legitimate penological interest possessed by defendants in denying Ouahman access to these items.  The court infers from Ouahman's allegations that a Qur'an and prayer rug are central to his religious practice.  Accordingly, the court concludes that Ouahman has asserted sufficient facts to state a claim for relief under the First Amendment.  No defendant responsible for the denial of the religious items has been identified by Ouahman.  To proceed with this claim, Ouahman must name a proper defendant to this action.

VIII. Excessive Force

The Fourteenth Amendment protects a pretrial detainee from excessive force that amounts to punishment.  See Ruiz-Rosa v. Rullan, 485 F.3d 150, 155 (1st Cir. 2007); Surprenant, 424 F.3d at 18.  In determining whether a plaintiff has stated a claim for unconstitutionally excessive force, a court should consider

the following factors: (1) the need for the use of force, (2)
the relationship between the need and the amount of force
applied, (3) the extent of injury inflicted, (4) the "threat
'reasonably perceived by the responsible officials,'" and (5)
"'any efforts made to temper the severity of a forceful
response.'"  Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing
Whitley v. Albers, 475 U.S. 312, 321 (1986)).  "[T]he core
judicial inquiry is . . . whether force was applied in a good-
faith effort to maintain or restore discipline, or maliciously
and sadistically to cause harm."  See Hudson, 503 U.S. at 7.

Here, Ouahman alleges that HCHC officers have subjected him
to unprovoked and unnecessary beatings during cell searches.
Ouahman claims that on one occasion the beating he received was
severe enough to cause a broken finger.  Ouahman alleges that
significant force was used against him, causing injury.  He
further alleges the force was used only to harm and harass him,
and not to maintain order.  Ouahman has therefore stated
sufficient facts to assert a claim for excessive force.

Ouahman has again, however, failed to name a defendant to
this action.  Accordingly, to proceed with this claim, Ouahman
must amend his complaint to add the names of the defendant or
defendants responsible for exerting excessive force against him.

IX.  Medical Care

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993); Giroux v. Somerset Cnty., 178 F.3d 28, 31 (1st Cir. 1999).  The Eighth Amendment protects convicted prison inmates from prison officials acting with deliberate indifference to their serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 831 (1994).  The Fourteenth Amendment, which protects the conditions of confinement for pretrial detainees, is at least as protective of a detainee's right to medical and mental health care as the Eighth Amendment.  See Surprenant, 424 F.3d at 18 (The parameters of the liberty interest at stake in the Fourteenth Amendment claim of a detainee "are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment."); DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991); United States v. Ayala López, 327 F. Supp. 2d 138, 144 (D.P.R. 2004) (citing, inter alia, Fischer v. Winter, 564 F. Supp. 281, 298 (N.D. Cal. 1983) ("Since sentenced inmates may be held under conditions that are punitive, while pretrial inmates may not be, the courts have said that the Due Process Clause affords greater protection to unsentenced inmates than the Eighth Amendment affords to the convicted.")).

"The failure of correctional officials to provide inmates with adequate medical care may offend the Eighth Amendment if their 'acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs.'"  Leavitt v Corr. Med. Servs., Inc., 645 F.3d 484, 497, (1st Cir. 2011). The Supreme Court has adopted a two-part test for reviewing medical care claims under the Eighth Amendment.  See Farmer, 511 U.S. at 834.

A court must first determine if the prisoner has alleged facts sufficient to show that he has not been provided with adequate care for a "serious medical need."  A serious medical need is one that involves a substantial risk of serious harm to the prisoner if it is not adequately treated.  See Gaudreault v. Mun'y of Salem, 923 F.2d 203, 208 (1st Cir. 1990) (defining serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"); Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003).

Second, the court must determine if the complaint contains sufficient allegations to show deliberate indifference.  Id.  To be found deliberately indifferent to an inmate's serious medical need, a prison official must both be actually aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists, and he or she must also actually draw

the inference.  See Farmer, 511 U.S. at 837.  Deliberate

indifference "may be shown by the denial of needed care as

punishment and by decisions about medical care made recklessly

with 'actual knowledge of impending harm, easily preventable.'"

Ruiz-Rosa, 485 F.3d at 156 (citation omitted).  The First

Circuit has recently noted that:

> The Eighth Amendment standard is in part one of
> subjective intent.  The phrasing [of the
> standard] itself implies at least a callous
> attitude, but subjective intent is often inferred
> from behavior and even in the Eighth Amendment
> context . . . a deliberate intent to harm is not
> required.  Rather, it is enough for the prisoner
> to show a wanton disregard sufficiently evidenced
> by denial, delay, or interference with prescribed
> health care.

Battista v. Clarke, 645 F.3d 449, 453 (1st Cir. 2011) (internal

quotation marks and citations omitted); see also Watson v.

Caton, 984 F.2d 537, 540 (1st Cir. 1993) (deliberate

indifference may be found in "wanton" decisions to deny or delay

care, where the action is reckless, "not in the tort law sense

but in the appreciably stricter criminal-law sense, requiring

actual knowledge of impending harm, easily preventable").

"'Inadvertent failures to provide medical care, even if

negligent, do not sink to the level of deliberate

indifference.'"  Braga v. Hodgson, 605 F.3d 58, 61 (1st Cir.

2010) (quoting DesRosiers, 949 F.2d at 19); see also Leavitt,

645 F.3d at 498 ("[C]arelessness or inadvertence falls short of the Eighth Amendment standard of deliberate indifference.").

Ouahman alleges that when his finger was broken during a beating by HCHC officers, he was denied all medical attention and care for his finger, including any treatment for the injury or for the pain resulting therefrom. Ouahman's allegation that he had a broken finger is sufficient to satisfy the "serious medical need" requirement of an inadequate medical care claim. Ouahman further states that he was denied all care for his finger. The allegations fail to show, however, that any officer or medical provider at the HCHC was aware of his injury or need for treatment. Thus, the allegations fail to show that any HCHC staff member acted with deliberate indifference to his injury. Accordingly, the medical care claim regarding Ouahman's broken finger should be dismissed.

X.    Supervisory Liability

The only defendant named in the complaint, aside from Sgt. Barnes, is HCHC Superintendent James O'Mara. O'Mara is the official who has general supervisory authority at the jail. "[A] supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an "'affirmative link' between the behavior of a subordinate and the action or inaction of his supervisor . . . such that the

25

supervisor's conduct led inexorably to the constitutional violation." Soto-Torres v. Fraticelli, ___ F.3d ___, ___, 2011 WL 3632450, *9 (1st Cir. Aug. 19, 2011) (quoting Maldonado v. Fontanes, 568 F.3d 263, 275 (1st Cir. 2009)).  The complaint fails to assert, however, any particular act or omission on O'Mara's part to indicate that he was aware of, participated in, or condoned any of the acts complained of by Ouahman in his complaint.  The complaint does not include any allegations demonstrating a basis for finding supervisory or municipal liability for any of the claims alleged.  Ouahman has asserted neither that O'Mara's conduct "led inexorably" to the actions complained of, nor that those actions were undertaken pursuant to any government policy or custom.  Accordingly, any claim of supervisory liability in this action should be dismissed.  As no claims are otherwise alleged against O'Mara, he should be dismissed from this action.

### Conclusion

For the foregoing reasons, the court recommends that the claims alleging violations of Ouahman's equal protection rights in the setting of his bail, discrimination at the HCHC, retaliation, inadequate medical care, and verbal harassment, be dismissed.  The court further recommends that James O'Mara and

Ouahman's supervisory liability claims be dismissed from this action.

Ouahman has asserted a viable claim against Sgt. Barnes alleging that he violated Ouahman's Fourteenth Amendment due process rights by subjecting him to unnecessarily restrictive housing conditions. In an order issued simultaneously with this report and recommendation, the court will direct service of that claim against Barnes.

Ouahman has also stated sufficient facts to assert claims that his due process rights were violated when he was subjected to: unhygienic conditions of confinement; deprivation of food; and excessive force. Further, Ouahman has asserted facts sufficient to allege claims under both the First Amendment and RLUIPA for the denial of the ability to practice his religion. Because Ouahman has not named defendants to these claims, in the order issued simultaneously with this report and recommendation, the court directs Ouahman to identify responsible defendants for each of these claims, and to move to amend his complaint to add those defendants to this action.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d

554, 564 (1st Cir. 2010); <u>United States v. Lugo Guerrero</u>, 524

F.3d 5, 14 (1st Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  August 29, 2011

cc:  Mohamed Ouahman, pro se

LBM:jba