UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Mohamed Ouahman

    v.                              Civil No. 11-cv-075-SM

James O'Mara, Superintendent,
Hillsborough County Department
of Corrections et al.

**REPORT AND RECOMMENDATION**

    Mohamed Ouahman filed a complaint (doc. no. 1) and an addendum to the complaint (doc. no. 3).[1]  The court then conducted a preliminary review of this matter pursuant to 28 U.S.C. § 1915A(a) and Rule 4.3(d)(2) of the Local Rules of the United States District Court for the District of New Hampshire ("LR").  After preliminary review, the court, on August 29, 2011, issued an order (doc. no. 6) directing service of one claim, alleging unconstitutionally restrictive conditions of confinement, on one defendant, Hillsborough County Department of Corrections ("HCDC") Sgt. Sydney Barnes.  On that date the court issued a Report and Recommendation (doc. no. 5) recommending dismissal of claims that alleged retaliation, harassment, inadequate medical care, and supervisory liability, and further

---

[1]The complaint (doc. no. 1) and addendum (doc. no. 3) were construed, in the court's August 29, 2011, Report and Recommendation (doc. no. 5) to comprise, in the aggregate, the complaint in this matter.

recommended dismissing HCDC Superintendent James O'Mara from the action.

The court, in its Report and Recommendation (doc. no. 5), identified several potentially viable claims raised by Ouahman for which no defendant had been named. The court directed Ouahman to amend his complaint to name defendants to those claims, and to state what each named defendant did or failed to do to violate Ouahman's rights. Ouahman thereafter filed a motion to amend the complaint (doc. no. 7) and an addendum (doc. no. 10), identifying defendants to those claims, and seeking to add several claims to this action, and in an order this date, the court has granted the motion to amend (doc. no. 7), for reasons stated therein.

Local Rule 4.3(d)(2) directs the magistrate judge to conduct a preliminary review of all amendments to prisoner complaints, to determine if they state any claim upon which relief can be granted. See LR 4.3(d)(2). The amendment and addendum (doc. nos. 7 and 10) will, going forward, be considered to be part of the complaint in this matter for all purposes.

**Discussion**[2]

I.  Spitting in Food/Denial of Food

In his initial filings, Ouahman alleged that HCDC officers, on a number of occasions, spat in his food or denied him food altogether, but failed to name the defendants who were responsible for those acts.  As stated above, Ouahman was given the opportunity to amend his complaint to identify individuals responsible for those acts.  Ouahman has filed two documents amending the complaint, but has not named any defendant to these claims.  To sufficiently state a claim for relief, plaintiff "must allege facts linking each defendant to the grounds on which that particular defendant is potentially liable."  Redondo Waste Sys., Inc. v. López-Freytes, ___ F.3d ___, ___, 2011 WL 4916921, *2 (1st Cir. Oct. 18, 2011).  Ouahman has failed to do so for the spitting in food and denial of food claims alleged in the initial complaint (doc. nos. 1 and 3), and accordingly, those claims should be dismissed.

---

[2]The court, in considering Ouahman's addenda to the complaint, has applied the same standard of review set forth in its previously issued Report and Recommendation (doc. no. 5). Further, the court relies on the background facts set forth therein, amending them here as appropriate based on Ouahman's recent filings.

II.  Hygiene Items

This court found in the previously issued Report and Recommendation (doc. no 5) that Ouahman had stated a Fourteenth Amendment claim alleging unconstitutionally punitive conditions of pretrial confinement by being denied hygiene products by an unnamed officer.  Ouahman has now identified HCDC Officer Beaudoin as the individual who disposed of his hygiene items on one occasion.  In his addendum, however, Ouahman states that Officer Beaudoin disposed of those items because Ouahman did not possess a receipt for them.  This additional fact undermines Ouahman's previous assertion that the hygiene items were taken in order to improperly punish Ouahman.  Ouahman has not alleged, in any of his filings, that he was not allowed to replace the items or that he was denied access to hygiene items for any significant period of time.

The court finds that removing property from inmates, even pretrial detainees, on one occasion, when an officer cannot ascertain whether the inmate is in proper possession of the items, is a reasonable and nonpunitive act taken in furtherance of proper facility management and institutional security. Accordingly, the court now recommends that Ouahman's claim that he was improperly denied his hygiene items by Officer Beaudoin be dismissed.

III. Toothbrush/Soap

Ouahman alleges that he was sometimes denied access to his toothbrush and soap for up to thirty-six hours at a time while he was housed in maximum security. While in maximum security, Ouahman was allowed only one hour per day of out-of-cell time. The court infers from Ouahman's assertions that Ouahman could retrieve his toothbrush and soap only during his out-of-cell time. The court further infers that Ouahman's out-of-cell time did not occur at the same time each day, resulting in up to a thirty-six hour period between toothbrushings.

Pretrial detainees, as Ouahman asserts he was when the claims asserted here arose, have the right, under the Due Process Clause of the Fourteenth Amendment, not to be punished prior to conviction. See Surprenant v. Rivas, 424 F.3d 5, 14 (1st Cir. 2005).

> Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however. Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as

5

> comfortably as possible and with as little restraint
> as possible during confinement does not convert the
> conditions or restrictions of detention into
> 'punishment.'

Bell v. Wolfish, 441 U.S. 520, 537 (1979).  While the decision to restrict access to his toothbrush and soap to certain times of day may have made pretrial detention uncomfortable for Ouahman, it is not the sort of extreme condition of confinement the court can find to be punitive under the circumstances alleged.  Accordingly, the court recommends that this claim be dismissed.

IV.  Denial of Sufficient Nutrition

Ouahman asserts generally that both the taste and the nutritional content of food served at the HCDC is poor.  Ouahman further opines, without specificity, that the HCDC food may be "below the Health Code standards as well as what is considered edible by the State of New Hampshire."  Ouahman supports this assertion with a claim that he lost a substantial amount of weight while incarcerated at the HCDC and that the inmates "all go to bed hungry."

In the Eighth Amendment context, prisons must provide inmates with "nutritionally adequate food."  See Querido v. Wall, C.A. No. 10-098 ML, 2010 WL 5558915, *5 (D.R.I. Dec. 8, 2010).  The same requirement applies in the Fourteenth Amendment context, as jailers would obviously have no less onerous

6

obligation to provide appropriate nutrition to pretrial detainees than they do to convicted inmates. Cf. Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 n.21 (1st Cir. 2011) (Eighth Amendment standard for evaluating prison medical care claims is same as Fourteenth Amendment standard for evaluating pretrial detention medical care claims).

An inmate's "bald assertions that the food is unsanitary and unhealthy and that the portions are too small are not sufficiently serious to assert a constitutional violation." Id. Without specific information detailing "how the food provided is nutritionally inadequate" or describing actual adverse health effects, a complaint does "not plead adequate facts to move his claim of constitutionally inadequate food 'across the line from conceivable to plausible.'" Querido, 2010 WL 5558915 at *5 (quoting Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1951). Ouahman asserts no specific facts identifying how the food is nutritionally inadequate and alleges no adverse health effect, citing only weight loss as a result of the alleged inadequacy of the food. Because Ouahman fails to state sufficient specific facts to assert a plausible claim that he was denied adequate nutrition while at the HCDC, this claim should be dismissed.

V.  Excessive Force Defendants

In his initial complaint, Ouahman stated a viable excessive force claim but did not name any defendants to that claim. Ouahman has now named two defendants to this action: HCDC Officer Meurin and HCDC Field Training Officer Fitzpatrick, who he claims engaged in excessive force against him on February 17, 2011. Ouahman has failed, however, to identify any specific act taken, or any failure to act, on the part of either Meurin or Fitzpatrick, that violated Ouahman's rights. Accordingly, the court finds that Ouahman has failed to sufficiently state plausible excessive force claims against either officer and recommends that the claims asserted against them be dismissed. See Redondo Waste Sys., 2011 WL 4916921, at *2.

VI. Religious Practice Claims

A.  Defendants Named

In his initial complaint, Ouahman stated cognizable claims alleging violations of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 et seq. ("RLUIPA"), for the failure of HCDC officials to provide him with a Qur'an and a prayer rug so that he could practice his religion. Ouahman initially failed to name any defendant to those claims. Ouahman has now identified HCDC Lt. Scurry and Sgt. Barnes as

individuals who denied his requests for a Qur'an, and Lt. Scurry as the individual who denied him access to a prayer rug. Accordingly, the previously asserted RLUIPA and First Amendment claims may proceed against those officers. In an order issued this date the court will add Lt. Scurry as a defendant to this action and direct service of the claim on both Lt. Scurry and Sgt. Barnes.

B.   Additional Claims

1.   Ramadan

In the amendment to his complaint, Ouahman now claims that he was denied the ability to observe the Muslim holiday of Ramadan. During Ramadan, Muslims must fast from sunrise until sundown and eat meals prior to sunrise or after sundown, according to the tenets of their religion. Ouahman alleges that Lt. Scurry denied his request for an accommodation to allow him to eat on a timetable consistent with the requirements of Ramadan. Ouahman denies that any security risk would have been created by the jail making such accommodations, and none are implied in the facts alleged in the complaint.

As fully discussed in the court's previously issued Report and Recommendation (doc. no. 5), Ouahman has a right to engage in his religious practice during his incarceration, and that right is protected by both RLUIPA and the First Amendment. See

42 U.S.C. § 2000cc-1(a) (government may not place "substantial burden" on religious exercise of institutionalized person under RLUIPA); Pell v. Procunier, 417 U.S. 817, 822 (1974) (prison inmate retains those First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system"). Ouahman has stated that Ramadan is a religious exercise, that allowing him to observe Ramadan would not have posed a security risk at the jail, and that Lt. Scurry denied him the accommodations necessary for him to observe Ramadan. Ouahman has sufficiently stated claims against Lt. Scurry under RLUIPA and the First Amendment's Free Exercise Clause for preventing Ouahman from observing Ramadan. The court will, therefore, in an order issued this date, direct that this claim proceed against Lt. Scurry.

    2.    Pork

Ouahman states that he made repeated requests for a Qur'an from Sgt. Barnes. After one such request, Sgt. Barnes told Ouahman not to ask for a Qur'an again, or he would "be in trouble." Ouahman asked what would happen if he continued to request a Qur'an, but Sgt. Barnes did not answer him. After that, Ouahman claims that he was fed only "dry meals" for a week, meaning he was not served hot, prepared food during that

time, but was provided only with bag meals.  Ouahman asserts that each dry meal contained pork, in contravention of Ouahman's religious diet which prohibits him from consuming pork.[3]

Ouahman names Sgt. Barnes as the apparent instigator of his dry diet week and also names Capt. Cussan as the individual in charge of and responsible for this violation of Ouahman's rights.  Ouahman does not point to any act by Sgt. Barnes, occurring after his generalized threat of "trouble," that connects Barnes to Ouahman's receiving dry meals.  Ouahman points to no specific facts outside of a bald assertion of responsibility connecting Capt. Cussan to the dry meals or the provision of pork in the dry meals.  Allegations of general responsibility for constitutional violations without specific facts linking an individual defendant to that violation are insufficient to state a plausible claim for relief against a defendant.  See Redondo Waste Sys., 2011 WL 4916921 at *2.  As such general assertions are all that is offered in support of Ouahman's asserted "pork claims," the court recommends that those claims be dismissed.

---

[3] Ouahman states that he was provided with "turkey ham sandwiches" for every meal.  While it is not clear what he means by "turkey ham," Ouahman specifically asserts that the sandwich contained pork, and the court will presume the truth of that assertion for purposes of preliminary review.

VII. <u>Retaliation Claim</u>

Also arising from Ouahman's allegations is a claim that giving him only pork for a week was a retaliatory act by Sgt. Barnes taken in response to Ouahman's repeated requests for a Qur'an. "Section 1983 imposes liability for retaliatory conduct by prison officials if the conduct was motivated 'in substantial part by a desire to punish [the] individual for the exercise of a constitutional right.'" <u>Jerry-El v. Beard</u>, 419 F. App'x 260, 263 (3d Cir. 2011) (quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 224 (3d Cir. 2000)). To establish a First Amendment retaliation claim, an inmate "must show that (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action." <u>McDowell v. Litz</u>, 419 F. App'x 149, 151 (3d Cir. 2011).

Assuming, without deciding, that Ouahman was exercising his First Amendment rights when he requested a Qur'an, and that being provided with seven days of pork dry meals was an adverse act, and that Ouahman can thus satisfy the first two prongs of a retaliation claim, the claim fails for Ouahman's failure to assert facts sufficient to allege causation, the third element of a retaliation claim. As stated above, Ouahman has failed to allege any specific facts demonstrating that Barnes' threat of

12

"trouble," or even Barnes himself, was causally connected in any way to Ouahman receiving dry meals. Because Ouahman has not alleged sufficient facts to state a retaliation claim upon which relief might be granted, that claim should be dismissed.

## Conclusion

For the foregoing reasons, the court recommends that the claims alleging: (1) excessive force; (2) spitting in his food; (3) denial of hygienic food; (4) denial of hygiene items on one occasion by Officer Beaudoin; (5) denial of toothbrush and soap access for thirty-six hours in maximum security; (6) denial of nutritious food; (7) being provided with pork meals for a week; and (8) retaliation, asserted by Ouahman in his complaint (doc. nos. 1, 3 , 7 and 10) be dismissed. The court further recommends that defendants Meurin, Fitzpatrick, Beaudoin, and Cussan be dismissed from this action.

The court finds that Ouahman has, at this time, alleged sufficient facts to state viable RLUIPA and First Amendment claims, against Lt. Scurry (denial of a prayer rug, a Qur'an, and accommodations for the observance of Ramadan) and Sgt. Barnes (denial of Qur'an). Sgt. Barnes has already been served with the complaint in this action, and he has filed an answer (doc. no. 11). In an order issued simultaneously with this Report and Recommendation, the court has directed that service

of the complaint (doc. nos. 1, 3, 7, and 10) be made upon defendant Scurry, and that Barnes file a response to the RLUIPA and First Amendment free exercise claims, set forth in the addenda (doc. nos. 3 and 10), asserting that Barnes denied plaintiff access to a Qur'an.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge

Date: October 25, 2011

cc:   Mohamed Ouahman, pro se
      John A. Curran, Esq.


LBM:jba