UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Mohamed Ouahman

    v.                                    Civil No. 11-cv-075-SM

Sergeant Sydney Barnes, III;
and Lieutenant Willie Scurry


## REPORT AND RECOMMENDATION


Pro se plaintiff Mohamed Ouahman, who was a pretrial detainee in the Hillsborough County House of Corrections ("HCHC") at all times relevant to this action, is suing two HCHC correctional officers.  Using the vehicle of 42 U.S.C. § 1983, he asserts that they violated his rights under: (1) the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc through 2000cc-5; (2) the First Amendment's Free Exercise Clause; and (3) the Fourteenth Amendment's Due Process Clause.  Before me for a report and recommendation is defendants' motion for summary judgment.  Ouahman has not objected.  For the reasons that follow, I recommend that defendants' motion for summary judgment be granted.


### Summary Judgment Standard

"To prevail on summary judgment, the moving party must show that 'there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law.'"  Markel
Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 29 (1st Cir. 2012)
(quoting Fed. R. Civ. P. 56(a)).  "In determining whether a
genuine issue of material fact exists, [the court] construe[s]
the evidence in the light most favorable to the non-moving party
and make[s] all reasonable inferences in that party's favor."
Markel, 674 F.3d at 30 (citing Flowers v. Fiore, 359 F.3d 24, 29
(1st Cir. 2004)).

     "The object of summary judgment is to 'pierce the
boilerplate of the pleadings and assay the parties' proof in
order to determine whether trial is actually required.'"  Dávila
v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12
(1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386
F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh
the evidence and determine the truth of the matter but to
determine whether there is a genuine issue for trial."  Noonan
v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and
internal quotation marks omitted).

### Background

     Defendants have submitted a statement of material facts, as
required by Local Rule 7.2(b)(1).  The following recitation is
based on the properly supported facts from defendants'

statement, which are deemed admitted, due to Ouahman's failure
to oppose them.  See LR 7.2(b)(2).

On February 9, 2011, Ouahman filed an HCHC Inmate Request
Form that states: "I request for a Muslim Book Quran and for
rosary beads in Islam.  We are allowed to use them for our
prayers."  Def.'s Obj. to Pl.'s Mot. to Amend ("Def.'s Obj."),
Ex. G (doc. no. 13-8) (capitalization corrected).  The next day,
Captain Willie Scurry[1] responded by providing Ouahman with the
address and telephone number of the Islamic Society of Merrimack
Valley.  See id.  On April 4, Ouahman filed an Inmate Request
Form that states, in part: "I'v[e] put in 6 request slips for a
Koran bible and have heard nothing back.  I'd like for you to
send me one for my Muslim prayers."  Id., Ex. H (doc. no. 13-9).
The next day, Capt. Scurry responded: "This is the 2d inmate
request form that I have received from you.  The 1st was dated
2/9/11.  This facility does not provide Qur'ans or rosary beads
of Islam.  You were provided with the contact information for
the Islamic Society."  Id.  On April 7, Ouahman filed an Inmate
Grievance Form regarding the HCHC's failure to provide him with
a Qur'an, but withdrew his grievance the next day.

---

[1] According to the affidavit filed by Captain Marc Cusson,
defendant Willie Scurry, now a Lieutenant, served as a Captain
while taking some or all of the actions at issue in this suit.
See Defs.' Mot. Summ. J., Cusson Aff. (doc. no. 36-6) ¶ 5.

On September 24, Ouahman filed an Inmate Grievance Form
that states, in pertinent part:

> I would like to file a grievance on Captain Cusson for
> the following reasons: first being I have been asking
> for the Koran since Jan. 4th using several request
> slips with no answer and no Koran.  Lt. Scurry said
> they do not give them here.  Second being for Ramadan
> I put in several requests for special meals for my
> fasting during this very important ritual in my
> religion.  Nobody got back to me.

Def.'s Obj., Ex. I (doc. no. 13-10).  While Ouahman requested,
and received, a special schedule for his meals during Ramadan in
2010, he made no such request in 2011.  <u>See</u> Defs.' Mot. Summ.
J., Cusson Aff. (doc. no. 36-6) ¶ 9.  Capt. Marc Cusson provided
Ouahman with a response to his September 24 grievance that
states, in pertinent part:

> Inmate Ouahman is cautioned that he has now submitted
> three grievances regarding a Koran.  This facility is
> no longer in possession of any donated Korans and
> therefore cannot distribute them to inmates.  The
> feast of Ramadan began on 08/01/11 and ended on
> 08/30/11.  This office received no request from Inmate
> Ouahman to alter his meal schedule based on Ramadan.
> . . .  No further action is required.

Def.'s Obj., Ex. I (doc. no. 13-10).  Subsequently, Assistant
Superintendent Dionne responded to Ouahman's grievance by
stating, in part:

> Inmate may purchase, have one donated or have one sent
> in from a publisher.  The county does not provide
> Korans to inmates at a cost.  No request slips or
> conversations with Sergeants or Lieutenants for your
> meals.  . . .  The grievance is unfounded.

<u>Id.</u>

4

On April 14, 2011, while conducting a training exercise on housing unit 1-D, Sergeant Sydney Barnes of the HCHC observed commissary items in Ouahman's cell that Ouahman was not permitted to have.  Ouahman, who was then in the housing unit's common area, admitted to Sgt. Barnes that he had obtained the commissary items by trading for them, in violation of HCHC regulations.  Sgt. Barnes ordered Ouahman to go into his cell. Ouahman responded by walking back into the common area and telling Barnes that he was going to finish a card game.  At that point, the officer working with Sgt. Barnes placed a radio call for a supervisor.  That supervisor, at the direction of his own supervisor, moved Ouahman from unit 1-D to a more restrictive housing unit, pending a hearing.  Sgt. Barnes did not make the decision to move Ouahman out of unit 1-D, as officers of his rank do not have the authority to transfer inmates from one housing unit to another.

Based on the foregoing, Ouahman has sued Sgt. Barnes and Lt. Scurry, asserting: (1) a claim against Sgt. Barnes for denying him a Qur'an, in violation of his rights under RLUIPA and the First Amendment; (2) a claim against Lt. Scurry for denying him a Qur'an, a prayer rug, and an accommodation for the observance of Ramadan, in violation of his rights under RLUIPA and the First Amendment; and (3) a claim against Sgt. Barnes for subjecting him to unnecessarily restrictive housing conditions,

in violation of his due-process rights under the Fourteenth
Amendment.

## Discussion

Defendants move for summary judgment, arguing that: (1)
they are entitled to qualified immunity; (2) Ouahman's claims
regarding a prayer rug and a meal schedule for Ramadan are
barred by his failure to properly exhaust them, as required by
the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a); (3) Lt.
Scurry's response to Ouahman's requests for a Qur'an did not
violate either RLUIPA or the First Amendment; and (4) Sgt.
Barnes cannot be liable for violating Ouahman's due-process
rights because he did not order Ouahman's transfer to a more
restrictive housing unit.  As noted, Ouahman has not objected to
defendants' motion for summary judgment.  The court begins with
Ouahman's claims based on denial of a Qur'an and prayer rug,
continues with his claim concerning an accommodation for
Ramadan, and concludes with his due-process claim.

### A. Qur'an and Prayer Rug Claims

In its Report and Recommendation of August 29, 2011, the
court directed Ouahman to amend his complaint to name specific
defendants who were, in his view, liable for violating his
rights under RLUIPA and the First Amendment.  He did so, in
part, by making the following allegations: (1) "Lt. Scurry was

the one who answered my requests and grievances concerning my Koran," Mot. to Amend (doc. no. 7); and (2) "I was asking for the Qur'an as I always do and a particular Seargant [sic] Barnes told me 'Do not ask me again for the Qur'an or you will be in trouble,'" Addendum (doc. no. 10).  Based on the foregoing, the court determined in its Report and Recommendation of October 25, 2011, that Ouahman had stated a viable claim against Sgt. Barnes, under RLUIPA and the First Amendment, for denying him a Qur'an, and a viable claim against Lt. Scurry, under RLUIPA and the First Amendment, for denying him a Qur'an and a prayer rug.[2]

## 1. RLUIPA

The Religious Land Use and Institutionalized Persons Act provides, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> > (1) is in furtherance of a compelling governmental interest; and
>
> > (2) is the least restrictive means of furthering that compelling governmental interest.

---

[2] Upon further review, the court is not so certain that Ouahman has actually identified a defendant who denied him a prayer rug, but the court's determination that Ouahman has stated a claim based on the denial of a prayer rug is the law of the case, and shall not be revisited at this point.

42 U.S.C. § 2000cc-1(a).  In other words, RLUIPA "bars prisons receiving federal funds from substantially burdening an inmate's religious exercise unless the regulation under attack is the least restrictive way to advance a compelling state interest." Kuperman v. Wrenn, 645 F.3d 69, 79 (1st Cir. 2011) (citing Cutter v. Wilkinson, 544 U.S. 709, 715-16 (2005)).  As the court of appeals for this circuit has explained:

> [A] claim under RLUIPA includes four elements.  On the first two elements, (1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial, the plaintiff bears the burden of proof.  [42 U.S.C.] § 2000cc-2(b).  Once a plaintiff has established that his religious exercise has been substantially burdened, the onus shifts to the government to show (3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest.  Id.

Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 38 (1st Cir. 2007).

Here, there can be little doubt that Ouahman's religious exercise was substantially burdened by the lack of a Qur'an and a prayer rug.  But, it is undisputed that when Ouahman was requesting a Qur'an from HCHC officials, the jail had none to give him, and explained that there were several different ways in which he could acquire one.  Thus, the burden on Ouahman's religious practice was not one imposed by Sgt. Barnes, Lt. Scurry, or any other employee of the HCHC.  As Judge Springmann has explained in an analogous case:

Since a Koran was essential to the Plaintiff's
religious exercise, by not having it, he was suffering
a detriment to his religious exercise.  Moreover, had
the jail provided him a Koran, it would have
alleviated this void in his practice of faith.  But
that is not to say that, by not giving him a Koran,
the jail imposed any burden upon him.  If the
Plaintiff suffered a hardship, it was not one created
by the jail.  No evidence exists that the policy not
to give him a Koran prohibited him from getting a
Koran on his own.  In fact, Chaplain Sievers tried to
assist the Plaintiff by contacting the local Imam, who
unfortunately did not respond.  The Plaintiff's claim
merely amounts to a demand that the jail provide him a
Koran.  Yet, neither the Constitution nor RLUIPA place
any duty on jails to provide inmates with religious
materials.  See Borzych [v. Frank], 439 F.3d [388,]
390 [(7th Cir. 2005)] (the First Amendment does not
require the accommodation of religious practice);
Cutter v. Wilkinson, 544 U.S. 709, 720 n.5 (2005)
("Directed at obstructions institutional arrangements
place on religious observances, RLUIPA does not
require a State to pay for an inmate's devotional
accessories.").  Accordingly, the Court will grant
summary judgment for the Defendant on the Plaintiff's
RLUIPA claim related to his request for a Koran.

Eley v. Herman, No. 1:04-CV-416-TS, 2006 WL 1722364, at *6 (N.D.

Ind. June 21, 2006).  Based on the persuasive reasoning of Eley,

Sgt. Barnes and Lt. Scurry are entitled to judgment as a matter

of law on Ouahman's RLUPA claims to the extent those claims are

based on his lack of a Qur'an and a prayer rug.

2. First Amendment

The First Amendment Free Exercise Clause, which applies to

the states, see Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S.

1, 6 n.4 (2004), "requires government respect for, and

noninterference with, the religious beliefs and practices of our

9

Nation's people," <u>Cutter</u>, 544 U.S. at 719. That said, the First Amendment provides less protection to the free-exercise rights of inmates than does RLUIPA. <u>See</u> <u>Bader v. Wrenn</u>, 675 F.3d 95, 98 (1st Cir. 2012) ("RLUIPA provides greater protection to inmates' free-exercise rights than does the First Amendment.") (quoting <u>Kuperman</u>, 645 F.3d at 79). If defendants did not violate RLUIPA by failing to acquire a Qur'an and a prayer rug for Ouahman, their failure to acquire those things for him certainly did not amount to unconstitutional governmental interference with his religious beliefs and practices. <u>See</u> <u>Eley</u>, 2006 WL 1722364, at *6 ("neither the Constitution nor RLUIPA place any duty on jails to provide inmates with religious materials"). Magistrate Judge Couch's Report and Recommendation in a case involving a First Amendment claim similar to Ouahman's is on point and persuasive:

> Plaintiff does not allege facts demonstrating that Defendants interfered with his ability to exercise his religion. His own allegations establish he was allowed to purchase a Catholic Bible through an approved vendor list. Plaintiff's claim, instead, is premised on an alleged obligation of prison officials to supply him with a Catholic Bible due to his indigent status. As no such constitutional obligation exists, Plaintiff's claim must fail. <u>See</u>, <u>e.g.</u>, <u>Rea v. Colorado Dept. of Corrections</u>, No. 09-CV-03014, 2010 WL 5575163 at *6 (D. Colo. Dec. 7, 2010) (unpublished op.) ("[P]rison officials do not have an affirmative duty to provide free religious materials or other articles to inmates.") (citing <u>Frank v. Terrell</u>, 858 F.2d 1090, 1091 (5th Cir. 1998)); <u>Kaufman v. Schneiter</u>, 474 F. Supp. 2d 1014, 1026 (W.D. Wis. 2007) ("[P]rison officials are not required to locate,

> purchase or provide religious items for inmates" but
> "are required only to refrain from interfering with
> inmates' ability to locate, purchase and obtain such
> materials on their own, at least insofar as obtaining
> such items is not inconsistent with legitimate prison
> interests.").  . . .  Therefore, it is recommended
> that Plaintiff's claim for monetary damages against
> the Defendants be dismissed for failure to state a
> claim upon which § 1983 relief may be granted.

Gonzales v. Adams, No. CIV-11-661-C, 2011 WL 3876521, at *2

(W.D. Okla. Aug. 9, 2011), adopted by No. CIV-11-661-C, 2011 WL

3876323 (W.D. Okla. Aug. 31, 2011).  In sum, Sgt. Barnes and Lt.

Scurry are entitled to judgment as a matter of law on Ouahman's

First Amendment claims to the extent those claims are based on

his lack of a Qur'an and a prayer rug.


   B. Ramadan Claim

   In response to the court's Report and Recommendation of

August 29, 2011, Ouahman made the following allegations related

to his Ramadan claim:

> Lt. Scurry was the one who answered my requests and
> grievances concerning . . . my celebrating my
> religious holiday Ramadan which was the whole month of
> August.  I was supposed to fast from sun up till sun
> down and eat meals accordingly[.]  [T]hey never
> accommodated me.

Mot. to Amend (doc. no. 7).  Based on the foregoing, the court

determined in its Report and Recommendation of October 25, 2011,

that Ouahman had stated a viable claim against Lt. Scurry, under

RLUIPA and the First Amendment, for preventing him from

observing Ramadan.

In support of their motion for summary judgment on that
claim, defendants have produced undisputed evidence that
Ouahman: (1) requested, and received, a meal schedule that
allowed him to properly observe Ramadan in 2010; but (2) never
requested such a schedule either before or during the month of
Ramadan in 2011.  That is the end of Ouahman's claim that Lt.
Scurry prevented him from observing Ramadan.  Based on the
undisputed factual record, the only thing that prevented Ouahman
from observing Ramadan in 2011 was his own failure to request an
appropriate meal schedule, such as the one he was allowed in
2010.  Because Lt. Scurry placed no burden on Ouahman's ability
to practice his religion, he is entitled to judgment as a matter
of law on Ouahman's RLUIPA and First Amendment claims based on
his inability to properly observe Ramadan in 2011.

### C. Due-Process Claim

In its Report and Recommendation of August 29, 2011, the
court wrote: "Ouahman has asserted a viable claim against Sgt.
Barnes alleging that he violated Ouahman's Fourteenth Amendment
due process rights by subjecting him to unnecessarily
restrictive housing conditions."  Doc. no. 5, at 27.  That
determination was based on Ouahman's allegations that: (1) he
had done nothing to merit a transfer from the general population
to maximum security housing; and (2) Sgt. Barnes "told Ouahman

that he moved him in order to 'fuck with' him, and that he
intended to continue to do so while Ouahman was at the HCHC,"
id. at 13.  Based on those allegations, the court determined
that Ouahman had stated a claim that Barnes violated his due-
process rights by acting "with the intent to punish him by
subjecting him to unnecessarily restrictive housing conditions
while [he] was detained pretrial."  Id.

The problem with Ouahman's due-process claim is that
defendants have produced undisputed evidence that Sgt. Barnes
did not move Ouahman or change his housing status.  First, there
is this from Sgt. Barnes:

> The supervisors in command at that time made the
> decision to transfer Mr. Ouahman to a more restrictive
> unit and to place him on an "awaiting hearing" status,
> based on the behavior exhibited to me and Officer
> Leite.  As I was not acting as a floor or facility
> supervisor at this time, I did not make any decisions
> relative to Mr. Ouahman's transfer to another housing
> unit, his placement or restrictions on the other unit
> nor the duration of his assignment to any more
> restrictive housing environment (that decision is made
> by a classification officer; such assessments are done
> regularly for general population and more often for
> maximum security housing inmates).  I did not
> recommend or make any decisions relative to any
> disciplinary write-ups that followed from these
> events.

Defs.' Mot. Summ. J., Barnes Aff. (doc. no. 36-2) ¶ 7.  Sgt.
Barnes' explanation of his role in the transfer/classification
process is corroborated by Capt. Cusson:

> I am aware that Mr. Ouahman claims that Sergeant
> Barnes initiated his transfer to a more restrictive

13

housing unit on April 14, 2011.  However, Sergeants
are not authorized to initiate transfers between
housing units.  This may only be done by a shift
commander (Lieutenant or above in rank) or via the
Classification Division.  On the cited date, Sergeant
Duclos (the first floor supervisor) obtained the
directive of his supervisor (a Lieutenant) in order to
transfer Mr. Ouahman from housing unit 1-D to 2-D.

Id., Cusson Aff. (doc. no. 36-6) ¶ 25.  In view of the
undisputed evidence that Sgt. Barnes did not transfer Ouahman
out of unit 1-D and, in fact, lacked the authority to do so,
Barnes is entitled to judgment as a matter of law on Ouahman's
Fourteenth Amendment claim.

## Conclusion

For the reasons detailed above, I recommend that
defendants' motion for summary judgment, document no. 36, be
granted, and that this case be closed.

Any objections to this report and recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57
(1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch.
Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st
Cir. 2010) (only issues fairly raised by objections to
magistrate judge's report are subject to review by district

court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

October 1, 2012

cc:  Mohamed Ouahman, pro se
     John A. Curran, Esq.